United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLGA C ALEXANDER,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF BRISBANE INC., et al.,<br><br>Defendants. | Case No. 20-cv-04563-WHO<br><br>**ORDER GRANTING THE BRISBANE DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 27 |

Plaintiffs Olga Alexander ("Olga") and her children T.A. and V.A. filed this action against her separated spouse Timothy Alexander ("Alexander") and The City of Brisbane Inc., Officers Robert Malone and Abraham Sevilla, Chief of Police Lisa Macias and Commander Mario Garcia (collectively the "Brisbane defendants") that arose initially out of a domestic dispute between Olga and Alexander. Before me is the Brisbane defendants' motion to dismiss the five causes of action asserted against them under 42 U.S.C. § 1983: (i) malicious prosecution; (ii) false arrest; (iii) *Monell* violation; (iv) deprivation of the right to familial association under the Fourteenth Amendment; and (iv) free speech retaliation under the First Amendment. Because Olga, T.A. and V.A. have failed to allege sufficient facts to state a claim under any of these causes of action, the Brisbane defendants' motion to dismiss is GRANTED with leave to amend except for the cause of action for malicious prosecution, which is dismissed with prejudice.

**BACKGROUND**

In 1981, Olga and her son from a previous marriage immigrated from Peru and settled in San Mateo, California and thereafter moved to Brisbane, California. First Amended Complaint

("FAC") [Dkt. No. 20] ¶¶ 47–48.[1] Olga started a small business, Ole Travel, in 1989 and later opened Ole Ventures. *Id.* ¶¶ 48, 57. She also worked as a Spanish middle school teacher in Brisbane. *Id.* ¶ 14.

Olga met Alexander in 2000; in 2003, they had twins, T.A. and V.A. *Id.* ¶ 50. Olga contends that she is a "long-time domestic violence victim of Alexander's alcohol abuse, his verbal and emotional abuse, his financial abuse, and, most recently, physical abuse." *Id.* ¶ 51. She alleges that the twins have suffered trauma as well "because they often witnessed Alexander's alcoholic outbursts, his verbal attacks of their mother, and other abuse, including the domestic violence on November 2016, October 2017, and July 2018." *Id.* ¶ 53.

In November 2016, Alexander was drunk and attacked Olga's grandson (the son of her son from her previous marriage) "while violently grabbing his phone." *Id.* ¶ 9. Olga called the Brisbane police, who "did nothing, other than provide Olga a referral to CORA, Community Overcoming Relationship Abuse, a San Mateo County non-profit agency." *Id.* She states that the officers should have arrested Alexander for domestic violence and that she, the twins, and her grandson were "entitled to a five-day emergency protective order ('EPO')." *Id.* ¶¶ 10, 12.

In October 2017, an accounting employee of Olga's company discovered that Alexander had been embezzling funds from Ole Ventures since at least 2016. *Id.* ¶ 62. When Olga confronted Alexander about it, the two fought and Alexander eventually left. *Id.* ¶ 63. Olga changed the locks and closed their joint account. *Id.* "After a few days of begging and with promises of counseling and overall improvement[,] Olga allowed him to return." *Id.* ¶ 64.

Olga alleges that Alexander was "planning for a divorce in which he would have the upper hand" and that "he only returned to instigate a bogus domestic violence incident and then file for divorce." *Id.* ¶¶ 65, 66. Alexander consulted with an attorney on June 9, 2018 who "advised him on how to file for a [Domestic Violence Restraining Order ('DVRO')] ex parte to evict Olga from the Brisbane home, and obtain custody of the children." *Id.* ¶ 67. Alexander "stage[d]" the domestic violence event on July 13, 2018.

---

[1] For purposes of deciding the motion to dismiss, I assume the truth of the allegations in the FAC.

2

On the evening of July 13, 2018, both Olga and Alexander had been drinking and Olga had also taken a sleep medication. *Id.* ¶¶ 71, 85. As Olga was falling asleep, "Alexander was able to startle [her] by yanking her cell phone from her hand." *Id.* ¶ 71. Olga "instinctively responded and tried to retrieve her phone" but that Alexander trapped her arms against the nightstand. *Id.* ¶ 72. Olga yelled for help and "[t]he children came and liberated her." *Id.* "Simultaneously Alexander showed them a scratch and rushed to take photos of it." *Id.* He also called the police "falsely claiming that Olga might harm herself." *Id.*

Defendants Malone and Sevilla arrived on the scene. After observing the scratches on Alexander and interviewing T.A. and Alexander, but allegedly not Olga and V.A., they arrested Olga for domestic battery in violation of California Penal Code section 243(e)(1). *Id.* ¶¶ 25, 78. Olga alleges that Malone and Sevilla did not adequately follow domestic violence policies, failed to check if she was injured (including bruising on her arm that "[h]er attorney took photos of"), and did not consider that Alexander is bigger than her in size. *Id.* ¶¶ 8, 77. She alleges that Malone had prior contact with her "as a peaceable and friendly Spanish teacher" and Sevilla had prior contact with her as "a businessperson," and that the police department's prior contact with Alexander was "as an inebriated, threatening, and abusive individual who was physically attacking Olga's teen nephew." *Id.* ¶ 8.

Olga was subsequently interviewed at the jail. *Id.* ¶ 80. Malone's police report "states that Olga declined the interview and stated she wanted an attorney," but then, "according to Malone, she suddenly volunteered she wanted Alexander to touch a knife so she could get his fingerprints on it." *Id.* ¶ 81 (hereinafter the "fingerprint statement"). Olga contends that she never made that statement. "According to the children, Olga briefly held a butter knife at her side after Alexander had claimed he was injured and irrationally told him to injure her as he claimed she had injured him." *Id.* ¶ 85.

The following day, on July 14, 2018, Malone and Sevilla tried to get an EPO for Alexander but "Judge Greenberg denied it." *Id.* ¶ 79. The charges against Olga were eventually dropped after she "obtained declarations from witnesses to Alexander's alcoholism and abuse and her children's declarations proving what had happened the night of the arrest and provided them to the

3

prosecutor." *Id.* ¶ 25. The prosecutor allegedly provided Malone a letter with a "more detailed explanation for dismissing the case," which Malone showed to Olga but "Malone refused to provide a copy of the letter to [her]" because the "gist of the letter was Malone and Sevilla had no probable cause to arrest Olga." *Id.* ¶ 26.

On July 18, 2018, Alexander filed a DVRO application in San Mateo County Superior Court. On the same day, the "court evicted Olga, gave full custody to Alexander, and denied Olga all contact with the twins." *Id.* ¶¶ 3, 40, 83, 86. The July 18, 2018 application was renewed on April 12, 2019 and December 1, 2020. *Id.* ¶ 3. Alexander and his attorney were successful in extending the order for nine months, then "Judge Lee imposed another year," and Olga was "pressured into agreeing to extending the DVRO until August 2021." *Id.* ¶¶ 90–91.

In January 2019, during the pendency of the DVRO proceedings, Chief of Police Macias allowed Olga to provide declarations by her and her children regarding what occurred the night of July 13, 2018. *Id.* ¶ 105. Olga alleges that the Brisbane police "stonewalled" processing her documents as a supplement to the police reports "until February 1 so that Malone who testified on February 1 [at the DVRO proceedings] did not have to acknowledge Olga's submission." *Id.* ¶ 108; *see* Plaintiff's Opposition to Motion to Dismiss ("Oppo.") [Dkt. No. 44], Ex. 8 (excerpts of Malone and Sevilla's testimony at the February 1, 2019 DVRO hearing).[2] After Olga's attorney subpoenaed the jail interview recording to use at the DVRO hearing, Malone supplemented his police report in March 2019 to say that Olga's voluntary "fingerprint statement" was not said in the interview room, but rather in the sally port. FAC ¶¶ 82, 110. Olga contends that "Brisbane's stonewalling, destruction of evidence, contradictory reports, and denial of all the recorded evidence successfully resulted in another year of a DVRO against [her]." *Id.* ¶ 114. In addition to denying her "due process" and "award[ing] a DVRO" to Alexander, Olga asserts that the Brisbane defendants also "protected Alexander repeatedly from criminal prosecution for embezzlement, vandalism to Olga's property, and break-ins." *Id.* ¶¶ 115–132.

---

[2] As further discussed below, the Brisbane defendants do not question the accuracy of this DVRO hearing transcript and do not oppose judicial notice of it because the document is not subject to a reasonable dispute. They challenge the other exhibits attached to Olga's opposition brief.

4

Olga claims that Alexander did not take proper care of the twins while under his care. *Id.* ¶ 94. In September 2018, V.A ran away from home because she wanted to stay with Olga instead. *Id.* ¶¶ 96–98. Another Brisbane officer, McCarthy (not named as a defendant in this case), responded to Olga's call for assistance to confirm her daughter's well-being, but Olga alleges that McCarthy violated Brisbane's domestic violence policy by not responding to the situation appropriately. *Id.* ¶¶ 98–102. A "custody evaluator" at an undisclosed date "recommended [that] Olga have the majority of parental time with the children with only weekend visitation for Alexander." *Id.* ¶ 95.

Based on these allegations, Olga brings the following section 1983 causes of action against both the Brisbane defendants and Alexander: (i) conspiracy to initiate malicious prosecution and malicious prosecution in violation of the Fourth Amendment ; (ii) conspiracy to commit false arrest and false arrest/false imprisonment in violation of the Fourth Amendment; (iii) *Monell* violation (against the Brisbane defendants only); (iv) deprivation of family rights in violation of the Fourteenth Amendment; and (v) free speech retaliation in violation of the First Amendment. FAC ¶¶ 133–161. T.A. and V.A. join in the fourth cause of action for deprivation of family rights. Olga separately brings embezzlement, domestic violence, and intentional infliction of emotional distress claims against Alexander. *Id.* ¶¶ 162–181.[3]

The Brisbane defendants move to dismiss the five section 1983 causes of action asserted against them. *See* Defendants City of Brisbane, Robert Malone, Abraham Sevilla, Lisa Macias, and Mario Garcia's Motion to Dismiss Plaintiffs' First Amended Complaint ("MTD") [Dkt. No. 27].[4] I heard argument on April 21, 2021.

---

[3] On April 1, 2021, T.A. and V.A. dropped their domestic violence and intentional infliction of emotional distress claims against Alexander. [Dkt. No. 46-1]. On April 13, 2021, Alexander appeared pro se and filed an answer to the FAC. [Dkt. No. 51].

[4] The Brisbane defendants argue that Olga may later attempt to bring state claims against them and that I should deny such a request, if and when it is made, because under the California Tort Claims Act ("CTCA"), Cal. Gov. Code § 905, she failed to present such a claim within six months after the accrual of the claim. MTD 19. In her opposition, Olga confirms that her claims against the Brisbane defendants are only brought under section 1983. Oppo. 25.

I also note that Olga and her children, represented by attorney Robert G. Cummings, filed separate opposition briefs that are largely identical. [Dkt. Nos. 44, 45]. I will refer to Olga's opposition

5

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

---

brief, Dkt. No. 44, for the purposes of this order.

6

**DISCUSSION**

**I.   REQUEST FOR JUDICIAL NOTICE**

Olga attached fifteen exhibits to her opposition brief. The Brisbane defendants object to judicial notice of all the exhibits except Exhibits 6, 7, 8, and 14. Defendants Objection to Certain Exhibits Attached to Opposition to Motion to Dismiss ("RJN Objections") [Dkt. No. 48-1] 2. Exhibits 6 and 7 are copies of the Brisbane and San Mateo County domestic violence policies, Exhibit 14 is the table of contents of the Brisbane's police manual, and Exhibit 8 is a transcript from the DVRO proceedings held on February 1, 2019 in San Mateo County Superior Court, Case No. 18-FAM-01724-A. Because these exhibits are not subject to a reasonable dispute, judicial notice of them is appropriate.

The Brisbane defendants argue that I should not take judicial notice of disputed facts contained in the remaining exhibits, including police reports and party statements, because they are subject to reasonable disputes between the parties in this case. RJN Objections at 3. When parties dispute the facts contained in a police report, courts within the Ninth Circuit will generally decline to take judicial notice. *See Zuccaro v. Martinez Unified Sch. Dist.*, No. 16-CV-02709-EDL, 2016 WL 10807692, at *5 (N.D. Cal. Sept. 27, 2016). Although some records of a state agency are the proper subject of judicial notice, a district court "may not take judicial notice of documents filed with an administrative agency to prove the truth of the contents of the documents." *Benavides v. City of Arvin*, No. 12–cv–0405, 2012 WL 1910259, at *3 (E.D. Cal. May 25, 2012) (citation omitted).

Because the contents of the police reports (Exhibits 1 through 4) are in dispute, judicial notice of them is inappropriate. *See Benavides*, 2012 WL 1910259, at *3 (declining to take judicial notice of contents of police report because "the allegedly indisputable facts contained in the police report . . . are subject to hearsay objections, and do not rise to the 'high degree of indisputability' required for judicial notice for their truth."); *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (explaining that not all records obtained from an administrative body fit within the judicial notice exception and "that the existence and content of a police report are not properly the subject of judicial notice") (citation omitted).

7

1    Olga contends that her January 28, 2019 letter to the Brisbane Police Department (Exhibit

2    9), along with the twins' July 16, 2018 declarations (Exhibits 10 and 11), were officially attached

3    to the police reports. Plaintiff's Declaration RE Authentication and Reply to Defendants'

4    Evidentiary Objections ("RJN Reply") [Dkt. No. 50] 4–5. Even so, I cannot take judicial notice of

5    these exhibits for the truth of the facts recited therein. The photographs (Exhibits 12 and 13) are

6    also not appropriate for judicial notice at this stage. Olga does not explain why judicial notice of

7    the other two exhibits, the Crime Notification Form (Exhibit 5) and Opinion of the Interamerican

8    Human Rights Commission (Exhibit 15), is necessary at this stage.

9    Olga added another exhibit (Exhibit 16) in her response, to which the Brisbane defendants

10   have not objected. *See* RJN Reply 7. Exhibit 16 is a transcript excerpt of Judge Lee's bench

11   ruling on April 12, 2019, granting Alexander's DVRO application. For the same reason with

12   respect to the February 1, 2019 transcript (Exhibit 8) discussed above, judicial notice of the April

13   12, 2019 transcript is appropriate as an official court document.

14   Olga's request for judicial notice of Exhibits 6, 7, 8, 14, and 16 is GRANTED. Judicial

15   notice of the remaining exhibits is DENIED.

## II.   CONSPIRACY CLAIMS

In her first two causes of action, Olga alleges that the Brisbane defendants conspired with Alexander to falsely arrest and initiate malicious prosecution against her. To allege a conspiracy under section 1983, Olga must show "an agreement or 'meeting of the minds' to violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (citing *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir.1989) (en banc)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Id.* at 441.

Olga's contention that the Brisbane defendants "conspired" with Alexander against her is unsupported by plausible factual allegations. She alleges that the police interacted with Alexander during an earlier incident when the roof of his office building collapsed and that Alexander "interfaced regularly with Brisbane police officers during the emergency." *Id.* ¶ 16. It is implausible to suggest a "meeting of the minds" to violate Olga's constitutional rights from this

alleged random interaction.  Conclusory allegations that Malone, Sevilla, and Alexander had "secret conversations" after the July 13, 2018 incident, and during the pendency of the DVRO proceedings fail as well.  None of these allegations plausibly establish that they came to "an agreement" to violate Olga's constitutional rights.  Even if, as Olga alleges, all Brisbane officers in a small police department *knew* about Olga and the DVRO proceedings against her, that does not plausibly suggest that they *conspired* with Alexander against her.

The Brisbane defendants' motion to dismiss the conspiracy theories under the first two causes of action is GRANTED.

### III. MALICIOUS PROSECUTION

Olga concedes that her malicious prosecution claim fails because there was no prosecution in her case and it is dismissed.  Oppo. 15; *see Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004).  But Olga argues that she has sufficient facts to plead a claim for "denial of fair trial and of equal access to justice" based on a denial of due process and equal protection.  Oppo. 15–17.  The Brisbane defendants do not respond whether this proposed claim is adequate; they only ask that I dismiss the malicious prosecution claim as alleged in the FAC.  *See* Defendants City of Brisbane, Robert Malone, Abraham Sevilla, Lisa Macias, and Mario Garcia's Reply in Support of Motion to Dismiss Plaintiffs' First Amended Complaint ("Reply") [Dkt. No. 48] 2.

I will give Olga leave to amend to plead her proposed "denial of fair trial" claim.  However, I note that to the extent that the claim is rooted in the insufficient conspiracy allegations discussed above, it would fail the Rule 8 pleading standard.  Olga contends that the Brisbane defendants are liable for the "false DVRO" because "Malone personally assisted Alexander in obtaining the ex parte DVRO, and Brisbane Defendants were instrumental in denying Olga a fair trial."  Oppo. 15.  The FAC contains no factual allegations that would plausibly suggest that Malone and Sevilla "personally assisted" or "conspired" with Alexander.

The Brisbane defendants' motion to dismiss the first cause of action is GRANTED with prejudice.  Olga may plead her proposed "denial of fair trial" claim but must provide plausible and specific facts to support her theory.

## IV. FALSE ARREST

To prevail on her section 1983 claim for false arrest and imprisonment, "[Olga] would have to demonstrate that there was no probable cause to arrest [her]." *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998). "Probable cause does not require proof beyond a reasonable doubt of every element of a crime." *United States v. Noster*, 590 F.3d 624, 629 (9th Cir. 2009). "Rather, probable cause exists where under the totality of the circumstances known to the officer, a prudent person would have concluded that there was a fair probability that the suspect had committed or was committing a crime." *Id.* at 629–30. That the charges against Olga were eventually dismissed does not, in itself, support a claim for unlawful arrest. *See Baker v. McCollan*, 443 U.S. 137, 145 (1979) ("The Constitution does not guarantee that only the guilty will be arrested. If it did, [section] 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released."). To state a claim, Olga must "plead facts showing that the arresting officer did not have probable cause to believe she committed a crime." *Anaya v. Marin Cty. Sheriff*, No. 13-CV-04090-WHO, 2014 WL 6660415, at \*6 (N.D. Cal. Nov. 24, 2014).

In California, misdemeanor spousal battery occurs when a battery is committed against a spouse. *See* Cal. Penal Code § 243(e). "A battery is any willful and unlawful use of force or violence upon the person of another." Cal. Penal Code § 242. Although California law does not prohibit dual arrests for domestic violence, it discourages them, when appropriate, by requiring officers to "make reasonable efforts to identify the dominant aggressor in any incident. *Gawf v. Cty. of San Benito*, No. C12-00220 HRL, 2013 WL 1366031, at \*4 (N.D. Cal. Mar. 31, 2013). The dominant aggressor is the person determined to be the most significant, rather than the first, aggressor." Cal. Penal Code § 13701(b). "In identifying the dominant aggressor, an officer shall consider the intent of the law to protect victims of domestic violence from continuing abuse, the threats creating fear of physical injury, the history of domestic violence between the persons involved, and whether either person acted in self-defense." *Id.*

Olga contends that Malone and Sevilla should not have relied on Alexander's statement when he declared himself as the victim. Generally, officers may not rely solely on the claim of a

10

citizen witness that he was the victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses. *Peng v. Mei Chin Penghu*, 335 F.3d 970, 978 (9th Cir. 2003). Nevertheless, "[a] sufficient basis of knowledge is established if the victim provides facts sufficiently detailed to cause a reasonable person to believe a crime had been committed and the named suspect was the perpetrator." *Id.* (citations and quotations omitted). Moreover, "a factual dispute regarding a victim's complaint at the scene of an alleged domestic disturbance does not defeat probable cause if: 1) the victim's statements are sufficiently definite to establish that a crime has been committed; and 2) the victim's complaint is corroborated by either the surrounding circumstances or other witnesses." *Id.* at 979.

Olga acknowledges that there was an altercation between her and Alexander on July 13, 2018, that both had been drinking, and that she was also under the influence of sleep medication. FAC ¶¶ 71–73. According to her own allegations, Alexander sustained scratches during the altercation (although the location of the scratches is disputed) and he showed the scratches to the children and "rushed to take photos of it." *Id.* ¶ 72–73. Alexander then called the police, claiming that Olga was going to hurt herself. *Id.* ¶ 78. When Malone and Sevilla arrived, Alexander told them that "Olga had committed domestic violence against him." *Id.* Malone and Sevilla observed the injuries on Alexander and received statements from Alexander and T.A. *Id.* ¶¶ 74, 78, 83. Malone and Sevilla decided to arrest Olga as the dominant aggressor based on the circumstances known to them at that time. As currently pleaded, the FAC does not provide sufficient facts giving rise to a plausible claim that Malone and Sevilla acted unreasonably in arresting Olga.

Much of Olga's opposition brief cites to portions of San Mateo County and Brisbane's domestic violence policies that she alleges Malone and Sevilla failed to follow, including a failure to interview her and her daughter V.A. at the scene. *See* Oppo. 8–12. Citing the domestic violence policies is not enough. To plausibly allege an unlawful arrest claim, she must focus on the *facts* that show Malone and Sevilla did not have probable cause to arrest her.

The relevant allegations here are what led to Olga's July 13, 2018 arrest and the circumstances known to Malone and Sevilla before their decision to arrest. Even if Alexander allegedly "stage[d]" the domestic violence incident, the inquiry is what Malone and Sevilla would

11

have reasonably concluded as responding officers. FAC ¶ 70. Olga fails to explain how allegations about her past relationship with Alexander or Alexander's subsequent civil court proceedings (and the alleged falsified reports Malone and Sevilla provided in those proceedings) are relevant to whether probable cause existed to arrest Olga the night of July 13, 2018.[5] For example, she mentions that there was a prior November 2016 incident where Alexander "attacked" her grandson and the Brisbane police were called but did nothing. *See id.* ¶ 9–12. But she fails to explain how that incident, which occurred over a year and a half before, has any relevance to what occurred on July 13, 2018 and how that could defeat probable cause to arrest her for what had transpired that night.

Conclusory allegations that Malone and Sevilla "conspired" with Alexander to get her arrested and that the "police department's prior contact with Alexander [was] as an inebriated, threatening, and abusive individual who was physically attacking Olga's teen nephew," do not suffice. *Id.* ¶ 8. Similarly, "the chain of probable cause *as to her* is not broken" despite her view that Alexander should have been arrested for the injuries he inflicted on her during their altercation. *Washington v. White*, No. 18-CV-00333-WHO, 2018 WL 11311454, at *5 (N.D. Cal. Aug. 28, 2018) (emphasis in original)

The Brisbane defendants' motion to dismiss the second cause of action for unlawful arrest is GRANTED. In amending her claim, Olga must provide sufficient *facts* giving rise to a plausible claim that Malone and Sevilla, given the totality of circumstances known to them at that time, acted unreasonably in arresting her.

## V. *MONELL* VIOLATION

Local governments "can be sued directly under [section] 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated

---

[5] Olga argues that there are several "contradictions" between what Malone and Sevilla reported and what they later testified in the DVRO proceedings. Oppo. 12–13. But even without those alleged contradictions (*i.e.*, that she did not say that she had six glasses of wine, that only one of her children was interviewed, and that she never made the alleged "fingerprint statement"), the circumstances as alleged in her FAC show that Malone and Sevilla acted reasonably in arresting her based on what they knew at the time of arrest.

12

by that body's officers." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). The Ninth Circuit has made clear that claims of *Monell* liability must comply with the basic principles set forth in *Twombly* and *Iqbal*: (i) the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively;" and (ii) the "factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *see also A.E. ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636–37 (9th Cir. 2012).

Olga must plausibly plead the following elements to proceed with her *Monell* claim: "(1) that [she] possessed a constitutional right of which [she] was deprived; (2) that the municipality had a policy, custom or practice; (3) that the policy, custom or practice amounted to deliberate indifference to [her] constitutional rights; and (4) that the policy, custom or practice was the moving force behind the constitutional violation." *Torres v. Saba*, No. 17-CV-06587-SI, 2019 WL 111039, at *6 (N.D. Cal. Jan. 4, 2019). Olga pursues her *Monell* claim under "failure to train" and "ratification" theories, alleging that (i) "Brisbane maintains a practice, custom, and habit whereby police personnel are improperly trained with respect to domestic violence victims seeking EPO's and fail repeatedly to provide all the rights domestic violence victims are entitled to based on the victims' female gender" and (ii) "Macias and Garcia, ratified and supported the misconduct of Malone and Sevilla." FAC ¶¶ 147, 149.

Failure to train government employees may constitute a sufficient policy under *Monell* if the failure constitutes "deliberate indifference" or otherwise "reflects a deliberate or conscious choice" by the government entity. *City of Canton v. Harris*, 489 U.S. 378, 389-93 (1989) (internal quotation marks omitted). When a failure to supervise is "sufficiently inadequate," it may amount to "deliberate indifference." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989). Mere negligence in training or supervision does not give rise to a *Monell* claim; rather, they need to train must be "obvious." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). Ordinarily, "[a] pattern of similar constitutional violations by untrained employees is . . .

13

necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal quotation marks and citation omitted).

Olga only provides factual allegations about the incidents that she experienced. Her personal experience by itself cannot establish that there was a widespread practice actionable under section 1983. Neither is it sufficient to assert generally that the City of Brisbane and officials within the police department, like Garcia and Macias, do not adequately train their officers. *See City of Canton*, 489 U.S. at 389–90 ("*Monell*'s rule that a city is not liable under [section] 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible."). The only allegations Olga provides outside of her experience with the police department are conclusory and/or made on information and belief, with no explanation of the basis for such beliefs or facts that would make their allegations plausible. For example, she conclusorily alleges that Brisbane "failed to [ensure] that whatever domestic violence policies they have in writing, the officers they employ must comport themselves according to those policies." FAC ¶ 148. Olga needs to plead facts that would support such an allegation, including facts that are not limited to the incidents that she experienced.

Olga's ratification theory fares no better. "To show ratification, a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it.'" *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (quoting *City of St. Louis v. Paprotnik*, 485 U.S. 112, 127 (1988)). A conclusory allegation that Garcia and Macias "ratified" Malone and Sevilla's conduct does not suffice. *See* FAC ¶ 149. Olga argues that she made Garcia and Macias aware of Malone and Sevilla's alleged misconduct with respect to the July 13, 2018 arrest, and McCarthy's inadequate response when V.A. ran away from home on September 14, 2018, but they "refused to discipline Malone and Sevilla for their false arrest and McCarthy for not investigating Alexander's child abuse." Oppo. 20. However, a police department's "mere failure to discipline [its officers] does not amount to ratification of their allegedly unconstitutional actions." *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part on other grounds, cert.*

14

*dismissed in part sub nom.,* 135 S. Ct. 1765 (2015); *Iopa*, 176 F.3d at 1239 ("[A] policymaker's knowledge of an unconstitutional act does not, by itself, constitute ratification.").

The Brisbane defendants' motion to dismiss the *Monell* claims is GRANTED.

## VI. DEPRIVATION OF FAMILIAL ASSOCIATION UNDER THE FOURTEENTH AMENDMENT

The Fourteenth Amendment protects a parent's "fundamental liberty interest in the companionship and society of his or her child[ren]." *Brown v. Alexander*, No. 13-CV-01451-RS, 2016 WL 829071, at *5 (N.D. Cal. Mar. 3, 2016) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001)). Those seeking to vindicate government "interference with that liberty interest without due process of law" may turn to section 1983 for a remedy. *Kelson v. City of Springfield*, 767 F.2d 651, 655 (9th Cir. 1985).

Olga, T.A. and V.A. contend that the Brisbane defendants deprived them of their right to familial association under the Fourteenth Amendment "[w]hen Malone and Sevilla falsely arrested imprisoned, and maliciously prosecuted Olga," which "caused the children and their mother to be separated." FAC ¶ 154. "When the prosecutor thwarted their efforts to criminally prosecute Olga," they allege that the Brisbane defendants "showed up at the DVRO hearing to give false testimony," eventually leading the judge to order separation. *Id.* ¶ 155.

The Brisbane defendants argue that this claim fails because, even if the alleged injury to the family occurred, Malone, Sevilla, Macias, and Garcia did not intentionally interfere with the familial relationship and did not cause the separation. To the contrary, Alexander initiated the civil court proceedings; it was the result of those proceedings that caused Olga to be separated from her children. MTD 15-16. The Brisbane defendants contend that their involvement in the situation was limited to arresting Olga based on probable cause and, pursuant to San Mateo policy, informing Child Protective Services ("CPS") that a domestic violence arrest involving children had occurred.

Olga argues that the DVRO proceedings would have never occurred if the Brisbane defendants didn't "falsely accus[e]" her of domestic violence and helped "cover[] up" Alexander's domestic violence and child abuse. Oppo. 21–22. She contends that Malone and Sevilla falsely

15

arrested her and reported her to CPS and sent the agency their falsified report.

As an initial matter, the familial association claim fails to the extent that Olga relies on the insufficiently pleaded false arrest and conspiracy claims addressed above. Even if those deficiencies are fixed on amendment, this claim suffers from the additional causation problem identified by the Brisbane defendants. That is, Olga, T.A. and V.A fail to allege the level of control the Brisbane defendants had over the DVRO proceedings to plausibly establish proximate causation. The plaintiffs fail to cite a case that has found a familial association claim sufficiently pleaded where separation occurred not directly by the named defendants, but by a chain of events allegedly caused by the named defendants.

In addition to the proximate causation problem, Olga also fails to allege plausible facts that would undermine the reasonableness of the Brisbane defendants' actions. The caselaw provides that the right to family association "requires [g]overnment officials . . . to obtain prior judicial authorization before intruding on a parent's custody of her child unless they possess information at the time of the seizure that establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury." *Arce v. Childrens Hosp. Los Angeles*, 211 Cal. App. 4th 1455, 1473, (2012) (internal quotation marks and citations omitted). "Officials, including social workers, who remove a child from its home without a warrant must have reasonable cause to believe that the child is likely to experience serious bodily harm in the time that would be required to obtain a warrant." *Id.* at 1473–74 (citation omitted). For example, the parents and children in *Acre* alleged that county defendants removed the children without authorization and sufficiently pleaded several facts to "undermine a reasonable belief that the parents presented an imminent threat to their children," including allegations that "multiple social workers and law enforcement officials did not believe the parents caused A.L.'s injuries or otherwise presented any imminent risk to the children." *Id.* at 1475–76. Olga fails to plead similar factual allegations that would render the officers' actions, including the decision to inform CPS of Olga's arrest, unreasonable under the circumstances.

The Brisbane defendants' motion to dismiss the deprivation of familial association claim is

1 GRANTED.

## VII. FREE SPEECH RETALIATION UNDER THE FIRST AMENDMENT

"As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech. If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (citations, brackets, and internal quotation marks omitted). To establish a First Amendment retaliation claim, Olga must demonstrate that (i) she engaged in a constitutionally protected activity; (ii) as a result, she was subjected to adverse action by the Brisbane defendants that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (iii) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).

Olga alleges that "[t]he acts complained of constitute retaliation for the petitioning activity" and that "[s]he repeatedly sought evidence proving her innocence from Brisbane and Defendants repeatedly punished her for doing so by the acts alleged in this complaint." FAC ¶ 159. In her opposition, she adds that she "engaged in petitioning activity" by "1) providing her evidence to the criminal prosecutor and to Macias to prove she was factually innocent of D.V.; 2) defending and prosecuting at the DVRO hearing; 3) requesting Macias and Garcia to prosecute Alexander by providing evidence of his child abuse, D.V., embezzlement, break-ins, vandalism, theft from her bank account." Oppo. 23.

Olga does not plausibly establish that her alleged activities qualify as "petitioning activities" protected by the First Amendment. Nor does she allege that the Brisbane defendants' actions "were *substantially caused* by [her] protected speech activities." *Adams v. Kraft*, No. 10-CV-00602-LHK, 2011 WL 846065, at *5 (N.D. Cal. Mar. 8, 2011) (emphasis added). She also fails to explain how the Brisbane defendants "deterred or chilled" her speech and that "such deterrence was a substantial or motivating factor in the [their] conduct." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 916 (9th Cir. 2012) (internal quotations and citations omitted).

17

The Brisbane defendants' motion to dismiss the First Amendment retaliatory claim is GRANTED.

## CONCLUSION

The Brisbane defendants' motion to dismiss is GRANTED. I grant leave to amend within thirty (30) days of this order. Olga's malicious prosecution claim is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: April 29, 2021



William H. Orrick
United States District Judge