UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLGA C ALEXANDER,<br><br>        Plaintiff,<br><br>    v.<br><br>THE CITY OF BRISBANE INC., et al.,<br><br>        Defendants. | Case No. 20-cv-04563-WHO<br><br>**ORDER GRANTING THE BRISBANE DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE; DISMISSING REMAINING CLAIMS SUA SPONTE**<br><br>Re: Dkt. No. 59 |

Plaintiff Olga Alexander ("Olga") brings this action against her separated spouse Timothy Alexander ("Alexander") and The City of Brisbane Inc., Chief of Police Lisa Macias, Commander Mario Garcia, and Officers Robert Malone, Abraham Sevilla, Adrian Valencia, and Robert McCarthy (collectively the "Brisbane defendants") for various claims that arose out of a July 13, 2018 domestic dispute between Olga and Alexander in which Olga was arrested.[1] On April 29, 2021, I granted the Brisbane defendants' motion to dismiss the First Amended Complaint with leave to amend. The Brisbane defendants now move to dismiss the Second Amended Complaint.

The deficiencies identified in my previous order have not been fixed. Because the Second Amended Complaint does not contain plausible and specific facts to support any of Olga's claims against the Brisbane defendants, the Brisbane defendants' motion to dismiss is GRANTED with prejudice. The federal claims against Alexander are sua sponte dismissed for the same reasons discussed in this order. I decline to exercise supplemental jurisdiction over the remaining state law claims against Alexander, which are dismissed without prejudice to re-filing in state court.

---

[1] On August 6, 2021, Olga's children, T.A. and V.A., who are represented by attorney Robert G. Cummings, voluntarily dismissed their claims in this suit. Notice of Voluntary Dismissal [Dkt. No. 67].

Olga's case in this court is closed.

## BACKGROUND

The allegations in the First Amended Complaint are detailed in my previous order, which I incorporate by reference here. *See* Order Granting the Brisbane Defendants' Motion to Dismiss First Amended Complaint with Leave to Amend ("First MTD Order") [Dkt. No. 55] 2–5. In the First Amended Complaint, Olga asserted five causes of action against the Brisbane defendants under 42 U.S.C. § 1983: (i) malicious prosecution; (ii) false arrest; (iii) *Monell* violation; (iv) deprivation of the right to familial association under the Fourteenth Amendment; and (v) free speech retaliation under the First Amendment. *Id.* at 1. I dismissed the malicious prosecution claim with prejudice because Olga was not prosecuted for her domestic violence arrest. All other claims were dismissed with leave to amend to address the deficiencies identified in the First MTD Order. *Id.*

In the Second Amended Complaint, Olga replaces her malicious prosecution claim with a "denial of fair trial" claim, realleges the false arrest, *Monell* violation, deprivation of the right to familial association, and free speech retaliation claims, and adds two new claims for disability discrimination and defamation. *See* Second Amended Complaint ("SAC") [Dkt. No. 58]. The claims are brought against the same Brisbane defendants identified before, except that Olga adds two new officers, Valencia and McCarthy, to the case. *Id.* ¶¶ 49–50. The gist of her allegations largely remains the same, as further addressed in the discussion section below.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff

2

must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION[2]

### I. CONSPIRACY CLAIMS

Olga alleges that the Brisbane defendants conspired with Alexander to falsely arrest her and violate her Fourth Amendment rights. To allege a conspiracy under section 1983, Olga must show "an agreement or 'meeting of the minds' to violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (citing *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir.1989) (en banc)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Id.* at 441.

In the First MTD Order, I found "Olga's contention that the Brisbane defendants 'conspired' with Alexander against her [was] unsupported by plausible factual allegations." First MTD Order at 8. Olga provided a list of random interactions between the Brisbane defendants and Alexander before the July 2018 incident and conclusorily alleged that the officers had "secret conversations" with Alexander after the July 2018 incident, none of which "plausibly establish[ed] that they came to 'an agreement' to violate Olga's constitutional rights." *Id.* at 9.

Olga now lists six actions by the Brisbane defendants and Alexander from which she

---

[2] Although Olga's 36-page opposition to the Brisbane defendants' motion to dismiss the SAC exceeds the page limit, and she did not seek leave to go over the page limit, I have still considered the entirety of her brief in making my ruling here. On August 5, 2021, Olga submitted a request for judicial notice, asking that I also consider her opposition to the Brisbane defendants' previous motion to dismiss along with supplemental authorities that she "inadvertently left out" in her 36-page opposition. Request for Judicial Notice [Dkt. No. 65]. I have considered those as well.

argues "an agreement" may be inferred: (i) possible evidence tampering, (ii) false reporting, (iii) Brisbane defendants' failure to produce a supplemental report as promised, (iv) possible collusion with Alexander because he mentioned the alleged "fingerprint statement" before the report was released, (v) Alexander's alleged knowledge that Olga was going to be arrested, (vi) and the Brisbane defendants' possible involvement in Alexander's embezzlement because Commander Garcia mentioned that she discussed the matter with Malone. These allegations suffer from the same defects as the First Amended Complaint. Olga fails to provide any specific *facts* to suggest that the Brisbane defendants had any agreement or meeting of the minds to violate her constitutional rights. Nor does she provide any circumstantial allegations that would support the plausibility of the six actions she alleges. If I took the six actions as true and considered them together, her allegations would still amount to mere speculation.[3] That is not enough to survive the pleadings stage.

The Brisbane defendants' motion to dismiss the conspiracy theories under the first and third causes of action is GRANTED with prejudice.

## II.  FALSE ARREST

In dismissing Olga's false arrest claim, I instructed her to "provide sufficient facts giving rise to a plausible claim that Malone and Sevilla, given the totality of circumstances known to them at that time, acted unreasonably in arresting her." First MTD Order at 12. It appears that Olga has now changed her false arrest theory. She no longer focuses on whether Malone and Sevilla had probable cause to arrest her for domestic battery during the July 2018 incident. Rather, she claims that they should have put her on a 5150 hold instead of arresting her. *See* SAC ¶ 130 (alleging that "under the information the officer had at the time of the call they failed to

---

[3] Olga's vague allegations are distinguishable from *Cameron v. Craig*, 713 F.3d 1012 (9th Cir. 2013), a case she provides in her supplemental authorities. In that case, the Ninth Circuit found genuine issue of material fact existed as to whether a county sheriff's detective and her colleague conspired to abuse their power as law enforcement officers to intimidate the colleague's ex-girlfriend during a search of her residence for suspected fraudulent use of his credit card, precluding summary judgment for the detective on the ex-girlfriend's Fourth Amendment conspiracy claim. *Id.* at 1023. Notably, before the case proceeded to the summary judgment stage, the trial court found that, under 28 U.S.C. § 1915(e)(2)(B) review, "Plaintiff's Complaint states a cognizable claim." *Cameron v. Buether*, No. 09-CV-2498-IEG (WMC), 2009 WL 10725753, at *1 (S.D. Cal. Nov. 16, 2009). Olga's SAC does not cross that threshold.

4

follow the San Mateo Police Department Policies 418.3 and 418.4 and erroneously arrested [her] instead of taking her to an approved mental health facility for evaluation"). "By not committing [her] as per 5150 protocol," she alleges that Malone and Sevilla "failed to follow the County Policies and deprived [her] of her Fourth Amendment right." *Id.* ¶ 136. Thus, she concludes, Malone and Sevilla "acted maliciously and in violation of [domestic violence] policy and commonsense" by "only secretly speaking with [Alexander]." *Id.* ¶ 138.

Even if Olga believes she should have been placed on a 5150 hold instead of being arrested, that does not undermine the probable cause Malone and Sevilla had in placing her under arrest. To the extent that she continues to take issue with Malone and Sevilla's reliance on Alexander's statements, her allegations do not show that Malone and Sevilla acted unreasonably under the circumstances. In the First MTD Order, I found:

> According to her own allegations, Alexander sustained scratches during the altercation (although the location of the scratches is disputed) and he showed the scratches to the children and "rushed to take photos of it." *Id.* ¶ 72–73. Alexander then called the police, claiming that Olga was going to hurt herself. *Id.* ¶ 78. When Malone and Sevilla arrived, Alexander told them that "Olga had committed domestic violence against him." *Id.* Malone and Sevilla observed the injuries on Alexander and received statements from Alexander and T.A. *Id.* ¶¶ 74, 78, 83. Malone and Sevilla decided to arrest Olga as the dominant aggressor based on the circumstances known to them at that time. As currently pleaded, the FAC does not provide sufficient facts giving rise to a plausible claim that Malone and Sevilla acted unreasonably in arresting Olga.

First MTD Order at 11. Olga repleads the same allegations in the SAC. *See*, *e.g.*, SAC ¶¶ 19, 29, 76–77, 101. She does not add any new allegations that give rise to a plausible claim that Malone and Sevilla acted unreasonably in arresting her.[4]

The Brisbane defendants' motion to dismiss the first cause of action for false arrest is GRANTED with prejudice.

---

[4] Olga again spends much of her opposition brief citing to portions of San Mateo County and Brisbane's domestic violence policies, this time focusing on portions that deal with the 5150 hold protocol. "Citing the domestic violence policies [was] not enough" before and remains insufficient under Olga's new theory as well. First MTD Order at 11. "To plausibly allege an unlawful arrest claim, she must focus on the *facts* that show Malone and Sevilla did not have probable cause to arrest her." *Id.* (emphasis in original). She has not fixed that deficiency in the SAC.

### III. DEPRIVATION OF FAMILIAL ASSOCIATION UNDER THE FOURTEENTH AMENDMENT

Olga contends that her right to familial association under the Fourteenth Amendment was violated "[w]hen Malone and Sevilla falsely arrested, imprisoned, and maliciously prosecuted Olga . . . directly caus[ing] the children and their mother to be separated and denied ongoing contact for 60 days with no contact and then for six months with extremely limited contact" and "causing Olga and the twins extreme pain and distress." SAC ¶ 217. This claim was previously dismissed "to the extent that Olga relie[d] on the insufficiently pleaded false arrest and conspiracy claims" and for the additional reasons that "Olga, T.A. and V.A fail[ed] to allege the level of control the Brisbane defendants had over the DVRO proceedings to plausibly establish proximate causation" and "fail[ed] to allege plausible facts that would undermine the reasonableness of the Brisbane defendants' actions." First MTD Order at 16.

The Second Amended Complaint fails to correct these deficiencies. In her opposition, Olga conclusorily argues that "[t]here is no question that Malone/Sevilla false arrest is the 'but-for' [sic] reason that Olga and the children were deprived of a family relationship" given that "[n]o one else called [Child Protective Services ('CPS')] except Malone" and "McCarthy was the proximate legal cause forcing V.A. and her brother to continue to live with their father after the false arrest." Opposition ("Oppo.") [Dkt. No. 63] 31. Olga must allege factual allegations from which proximate causation may be inferred. Simply saying it so is not enough. The remainder of her argument relies on the same implausible false arrest and conspiracy allegations I rejected before. None of them plausibly render the officers' actions, including the decision to inform CPS of Olga's arrest, unreasonable under the circumstances.

Olga's case citations do not save her claim either. For instance, she relies on *Hoffman v. Halden*, 268 F.2d 280, 296–97 (9th Cir. 1959), *overruled in part on other grounds, Cohen v. Norris*, 300 F.2d 24, 30 (9th Cir. 1962), for the contention that the Brisbane defendants used CPS as a mere conduit for their misconduct. The Ninth Circuit in *Hoffman* held that "[i]n a Civil Rights conspiracy case, the injury and damage must flow from the overt acts" and "[w]here the gravamen of the injury complained of is commitment to an institution by court order, this order of the court, right or wrong, is ordinarily the proximate cause of the injury." *Id.* at 296. "Various

1    preliminary steps occur before the order is made;" in that case, the officers involved in the

2    criminal commitment of the plaintiff allegedly took steps that were in violation of both court

3    orders and state law and were themselves violations of due process. Under those circumstances,

4    the Ninth Circuit held that the acts could have caused the plaintiff injury through his resulting

5    imprisonment. *Id.* at 298. Olga's allegations are distinguishable. She does not plausibly allege

6    that the officers' decision to inform CPS, under the circumstance as she describes them, was itself

7    a violation of due process, nor does she provide any other allegations that could bolster her

8    proximate causation theory.

9    The Brisbane defendants' motion to dismiss the fifth cause of action for deprivation of

10   familial association is GRANTED with prejudice.

### IV.    DENIAL OF FAIR TRIAL AND DUE PROCESS

Olga largely relies on the same allegations as her false arrest and deprivation of family rights claims to bring her new "denial of fair trial and due process" claim. She contends that "[t]he Defendants Brisbane Police Department Violated Olga's U.S. Const. amend. XIV (Due Process Clause) by critically disregarding the 5150 call and failing to follow the San Mateo County and the Brisbane Police Department procedures when attending the July [2018] call." SAC ¶ 142. She alleges that "[b]y arresting [her], without investigating or interviewing her" and "fully knowledgeable of the custody ramifications after the arrest," the Brisbane defendants "proceeded willfully and intentionally, covering their false arrest over a scratch with a Violent Crime Notification so Alexander could ensure a TRO in San Mateo." *Id.* ¶ 143.

This claim suffers from a similar proximate causation problem as the deprivation of family rights claim discussed above. Olga fails to plausibly allege how the Brisbane defendants initiated or caused the obstacles she faced in defending against the DVRO proceedings Alexander initiated against her. At best, Olga points to a potential delay in obtaining reports and videos from the Brisbane defendants to use in the DVRO proceedings. *See, e.g.*, *id.* ¶ 146 ("By refusing to provide the videos the defendants assured that Olga would be denied a fair trial and that Alexander would obtain a TRO along with a move-out order."). That alone cannot form the basis for a denial of fair trial/due process claim. As I cautioned in my previous order:

> However, I note that to the extent that the claim is rooted in the insufficient conspiracy allegations discussed above, it would fail the Rule 8 pleading standard. Olga contends that the Brisbane defendants are liable for the "false DVRO" because "Malone personally assisted Alexander in obtaining the ex parte DVRO, and Brisbane Defendants were instrumental in denying Olga a fair trial." Oppo. 15. The FAC contains no factual allegations that would plausibly suggest that Malone and Sevilla "personally assisted" or "conspired" with Alexander.

First MTD Order at 9. Without factual allegations to support the plausibility of her claim, Olga's allegation that the Brisbane defendants conspired with Alexander to delay or obstruct Olga's access to evidence is conclusory and speculative.

The Brisbane defendants' motion to dismiss the second cause of cation for denial of fair trial/due process is GRANTED with prejudice.

## V. *MONELL* VIOLATION

Olga pursues her *Monell* claim under "failure to train" and "ratification" theories, alleging that (i) Brisbane "maintains a practice, custom, and habit whereby police personnel [are] improperly trained with respect to domestic violence victims seeking EPO's and fail repeatedly to provide all the rights domestic violence victims are entitled to based on the victims' female gender" and (ii) "Macias and Garcia ratified and supported the misconduct of Malone and Sevilla." SAC ¶¶ 193, 195.

I previously found that the "failure to train" theory failed because "Olga only provide[d] factual allegations about the incidents that she experienced" and only generally asserted "that the City of Brisbane and officials within the police department, like Garcia and Macias, do not adequately train their officers." First MTD Order at 14. In the SAC, Olga now claims a "pattern and practice against female domestic violence victims" and adds three incidents not involving herself: (i) the "notorious violent domestic violence case" involving Shelly Titchner, who was murdered by her husband on February 12, 2016 "after multiple DV calls"; (ii) a April 19, 2016 incident in which Sevilla and another office arrived at Maria Theresa Martinez's home at 3 a.m. without a warrant and ultimately took her children; and (iii) an incident involving Jaspreen Bajwa and the domestic violence call her husband made against her on August 28, 2018, a few days after he filed for divorce, which ultimately resulted in Bajwa's false arrest. *See* SAC ¶¶ 207, 212.

These allegations do not suffice. "A pattern of *similar* constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (emphasis added). The three incidents Olga provides are not sufficiently similar to what happened to her in July 2018. Moreover, only when a city is on "actual or constructive notice that a particular omission in [its] training program causes city employees to violate citizens' constitutional rights" can the city "be deemed deliberately indifferent." *Id.* at 61. She provides no plausible allegation of such actual or constructive notice here.

To the extent that Olga attempts to allege "failure to discipline" based on the three incidents, that theory fails as well. "If the same officer repeatedly violates the constitutional rights of a city's residents, and the city is on notice of these violations and fails to properly discipline the officer, by definition the city is deliberately indifferent to the likelihood that the officer will continue to commit constitutional violations in the future." *Hayes v. Riley*, No. 20-CV-04283-VC, 2020 WL 5816581, at *2 (N.D. Cal. Sept. 30, 2020) (citing cases). Out of the three incidents she alleges, only one (Maria Theresa Martinez) involved the same officer (Sevilla) as in her case.

Nor has Olga fixed the deficiencies of her "ratification" theory. In the previous order, I noted that "a police department's 'mere failure to discipline [its officers] does not amount to ratification of their allegedly unconstitutional actions.'" First MTD Order at 14 (quoting *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part on other grounds, cert. dismissed in part sub nom.,* 135 S. Ct. 1765 (2015)). The SAC largely contains the same conclusory allegations I rejected before. Olga fails to provide sufficient allegations to suggest that any city official was made aware of the alleged unconstitutional acts by the officers and that they then approved and ratified such conduct. For instance, she adds that "Chief Macias specifically failed to follow. . . San Mateo Policies" in responding to her complaints about Malone and Sevilla. SAC ¶ 199. That still does not explain how Chief Macias necessarily "ratified" Malone and Sevilla's alleged conduct to support a *Monell* claim.

The Brisbane defendants' motion to dismiss the fourth cause of action for *Monell* violations is GRANTED with prejudice.

## VI. FREE SPEECH RETALIATION UNDER THE FIRST AMENDMENT

Olga alleges that "[t]he acts complained of constitute retaliation for the petitioning activity" and that "[s]he repeatedly sought evidence proving her innocence from Brisbane and Defendants repeatedly punished her for doing so by the acts alleged in this complaint." SAC ¶ 231. I previously dismissed this claim because Olga failed to "plausibly establish that her alleged activities qualify as 'petitioning activities' protected by the First Amendment" and that "the Brisbane defendants' actions 'were substantially caused by [her] protected speech activities,'" and also failed to "explain how the Brisbane defendants 'deterred or chilled' her speech and [how] 'such deterrence was a substantial or motivating factor in the [their] conduct.'" First MTD Order at 17 (quoting *Adams v. Kraft*, No. 10-CV-00602-LHK, 2011 WL 846065, at *5 (N.D. Cal. Mar. 8, 2011) and *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 916 (9th Cir. 2012)).

Olga now lists ten "requests for assistance" that the Brisbane defendants refused to act upon and contends that she was harmed when they retaliated against her for some of those requests. For example, she alleges that (i) officers refused to arrest Alexander in November 2016 when he attacked Olga's grandson; (ii) officers did not provide the necessary assistance when her daughter ran away from home in September 2018; and (iii) officers refused to investigate damage to her property, including "damages to her heirloom family albums," in October 2018. Oppo. 26–28. Many of these allegations appear for the first time in her opposition brief. Even if pleaded in the SAC, these allegations still fail to plausibly establish that Brisbane defendants' actions were substantially caused by and in retaliation to Olga's protected speech activities.

The Brisbane defendants' motion to dismiss the sixth cause of action for First Amendment retaliation is GRANTED with prejudice.

## VII. DISABILITY DISCRIMINATION

Olga adds a new claim for disability discrimination in the SAC. She claims that she was "suffering from a temporary disability based on having just taken a sleep medication and having just experienced domestic violence inflicted on her by Alexander when Malone and Sevilla showed up" and that she "also ha[d] chronic pain related to injuries from an auto accident" she suffered prior to the July 2018 arrest incident. SAC ¶ 241. She contends that she was

1  "discriminated against based on her disability by the failure of Malone and Sevilla to follow
2  Brisbane mental health policy which required [them] . . . (1) to evaluate [her] concerning her
3  mental status, (2) interview her, and her son and daughter about what had just occurred and about
4  Olga's mental status, and (3) to ask her whether she would like to go to a mental health facility."
5  *Id.* ¶ 243.

Putting aside the implausibility of her claimed "temporary disability" based on sleep medication and the physical altercation she had with Alexander, Olga fails to allege that Malone and Sevilla "denied" her a 5150 hold or arrested her based on her claimed disabilities or that they had any specific intent to discriminate against her due to her protected status. Olga spends much of her opposition brief arguing that Malone and Sevilla made no attempt to do a 5150 hold as opposed to arresting her and that that the officers' refusal to interview her was disability discrimination. But she fails to provide any plausible factual allegations that the officers' decision to "deny" a 5150 hold and arrest her was motivated by discriminatory animus. Nor does she provide any authority that would support finding a disability discrimination claim in this particular scenario, *i.e.*, where an individual was evaluated for a 5150 hold, it was determined that she was not a danger to herself or others, and instead she was arrested for a crime supported by probable cause given what was known to the officers at that time.[5]

The Brisbane defendants' motion to dismiss the seventh cause of action for disability discrimination is GRANTED with prejudice. Though this is the first time she has alleged this claim, I find that amendment would be futile.

## VIII. DEFAMATION

Olga adds this claim against Valencia, Macias, and Garcia based on the allegation that "Valencia defamed Olga by writing in an official police report that she presented a false statement of facts about Alexander's embezzlement and misappropriation of funds. Macias and Garcia

---

[5] Olga asserted her disability discrimination claim against Malone, Sevilla, and the City of Brisbane. Although she focuses on Malone and Sevilla's actions, she drops her claim against Malone and Sevilla in her opposition and instead alleges the City of Brisbane's liability based on a "respondeat superior" theory. *See* Oppo. 9. That theory fails for the same reasons stated above—Olga has not plausibly alleged discriminatory animus.

11

supported and approved the report." SAC ¶ 250. The elements of defamation are: (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage. *Price v. Operating Engineers Local Union No. 3*, 195 Cal. App. 4th 962, 970 (2011).

Olga's claim is barred by California Government Code section 821.6, which provides immunity to a public employee "for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov't Code § 821.6; *see Amylou R. v. Cty. of Riverside*, 28 Cal. App. 4th 1205, 1210 (1994) (finding section 821.6 immunity barred plaintiff's claim for slander and other state law claims based on the officers' conduct during an investigation, in which officer suspected that she "knew more than she was telling them"). Olga also fails to plausibly allege the elements of defamation. For instance, she only speculates that Valencia discussed the report with Alexander, providing no plausible factual allegation that Valencia "published" the allegedly defamatory statement. Any "publication" of the statement Valencia did to his supervisors would be covered under section 821.6 immunity.

Because Olga cannot plead around the immunity issue, the Brisbane defendants' motion to dismiss the eighth cause of action for defamation is GRANTED with prejudice.

## IX.     CLAIMS AGAINST ALEXANDER[6]

Some of the claims addressed in this order are also brought against Alexander: false arrest, conspiracy to violate the Fourth Amendment, deprivation of family rights, and free speech retaliation. *See* SAC ¶¶ 124–40, 155–92, 215–39 (first, third, fifth and sixth causes of action). These claims fail for the same reasons discussed above and are sua sponte DISMISSED with prejudice. *See* 28 U.S.C. § 1915(e)(2) (providing that a court "shall dismiss the case at any time if the court determines that" the action is "frivolous or malicious" or "fails to state a claim on which relief may be granted").

---

[6] On April 13, 2021, Alexander appeared pro se and filed an answer to the First Amended Complaint. Answer to Plaintiff's Complaint [Dkt. No. 51]. He has not responded to the operative Second Amended Complaint before me now.

That leaves Olga's state law claims against Alexander: embezzlement, domestic violence, and intentional infliction of emotional distress. *See* SAC ¶¶ 162–181 (ninth, tenth, and eleventh causes of action). I decline to exercise supplemental jurisdiction over the remaining claims and sua sponte dismiss them without prejudice so Olga may re-file in state court. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1096 (N.D. Cal. 2015) (finding a court "may sua sponte decline to exercise supplemental jurisdiction over remaining state law claims" when a district court has dismissed all claims over which it has original jurisdiction); *Robles v. Name of Human.*, No. 17-CV-04864-CW, 2019 WL 233224, at *1 (N.D. Cal. Jan. 16, 2019), *aff'd in relevant part, rev'd on other grounds Robles v. City of Berkeley*, 820 F. App'x 529 (9th Cir. 2020) (declining supplemental jurisdiction over remaining state law claims and dismissing them "without prejudice to re-filing in state court, although she must do so timely").

## CONCLUSION

The federal law claims against the Brisbane defendants and Alexander are DISMISSED WITH PREJUDICE. The remaining state law claims against Alexander are DISMISSED WITHOUT PREJUDICE. Judgment shall be entered accordingly and the Clerk shall close this case.

**IT IS SO ORDERED.**

Dated: August 16, 2021

William H. Orrick
United States District Judge

13